UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFFREY W. HOLTON,

    Plaintiff,

v.                                                                                    Case No. 8:25-cv-1546-WFJ-CPT

NICHOLAS A. SUDZINA, in his
individual and official capacities,
KIMBERLY JENKINS, in her
official and individual capacities,
STEPHANIE SULLIVAN, in her
official and individual capacities,
JOHN DOES 1-X (GENERAL
COUNSEL), in their official and
individual capacities, and JOHN
DOES Y-Z (IT DEPARTMENT), in
their official and individual capacities,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before me on referral is pro se Plaintiff Jeffrey Holton's fourth amended *Application to Proceed in District Court Without Prepaying Fees or Costs* (Doc. 24), which I construe as a motion to proceed in forma pauperis (IFP Motion). Also before me is Holton's amended complaint (with accompanying attachments) against Defendants Nicholas Sudzina, Kimberly Jenkins, Stephanie Sullivan, John Doe Attorneys 1-X

within the Office of the General Counsel of the Tenth Judicial Circuit Court Administration, and John Doe IT Department Employees Y-Z of the Tenth Judicial Circuit Court Administration (collectively, Doe Defendants). (Doc. 22). For the reasons discussed below, I respectfully recommend that Holton's IFP motion be denied and that his amended complaint be dismissed with leave to amend.

I.

This case stems from a state court proceeding involving Mr. Holton and his former spouse, which was filed in Florida's Tenth Judicial Circuit (Tenth Circuit) and which was assigned to Circuit Judge Gerald P. Hill, II. (Doc. 22). The crux of Mr. Holton's amended complaint is that his constitutional rights were infringed in a number of respects by Judge Hill's judicial assistant, Ms. Jenkins, as well as by the Tenth Circuit's court administrator and human resources manager, Mr. Sudzina and Ms. Sullivan, respectively, and the Doe Defendants. *Id.*

In support of these charges, Mr. Holton avers that Ms. Jenkins engaged in various improper "scheduling and gatekeeping functions," which consisted of, inter alia, requiring opposing counsel's consent to set hearings, scheduling a contempt proceeding with less than twenty-four hours' notice and without coordinating with Mr. Holton, sequencing opposing counsel's motions to be heard by the court before Mr. Holton's submissions, and communicating with opposing counsel regarding substantive issues without notice to Mr. Holton. *Id.* According to the materials attached to Mr. Holton's amended complaint, his frustration with these practices apparently led him in May 2025 to file a request with the Tenth Circuit pursuant to

2

Florida's Public Records Act, Fla. Stat. § 119.01(1) (Florida's Public Records Act or the Act).[1] (Doc. 22-1 at 2). By way of this demand, Mr. Holton sought the disclosure of Ms. Jenkins's "work attendance records;" "timekeeping logs;" "leave requests;" "in/out status logs;" "[e]mail autoresponder/out-of-office settings, including timestamps and related metadata;" and the "[i]nternal communications or memoranda referencing" Mr. Holton and/or his case. *Id.*

As also reflected in Mr. Holton's attachments, Mr. Sudzina issued a written reply to Mr. Holton's records request in June 2025. *Id.* at 10–11. In his reply, Mr. Sudzina identified the responsive documents and informed Mr. Holton that he would be charged a fee of several hundred dollars to either view or receive copies of these materials. *Id.* Mr. Holton objected to being assessed such a cost and visited the Tenth's Circuit judicial administration office, where Ms. Sullivan apparently echoed Mr. Sudzina's statement that a payment was required to access the sought-after records. *Id.* at 13–16, 18–19.

---

[1] The Florida Constitution provides that every person has "the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state," except with respect to certain exempted records. FLA. CONST. art I, § 1. This right is codified in the Act, which describes Florida's policy that all state, county, and municipal records are open for personal inspection and copying by any person. Fla. Stat. § 119.01(1) (2018). As pertinent here, the Act directs that any individual with custody of a public record must allow the record "to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records." Fla. Stat. § 119.07(1)(a). As also relevant here, the Act further states that "[a] custodian of public records and his or her designee must acknowledge requests to inspect or copy records promptly and respond to such requests in good faith." Fla. Stat. § 119.07(1)(c).

3

Based on these and other allegations, Mr. Holton asserts claims in his amended complaint pursuant to 42 U.S.C. § 1983 against Ms. Jenkins in her individual capacity for retaliation under the First Amendment and for violations of procedural due process under the Fourteenth Amendment (Counts I, VI). (Doc. 22). Mr. Holton also asserts section 1983 claims pursuant to the same constitutional provisions against Mr. Sudzina in his individual capacity on the ground that he bears "supervisory responsibility" for Ms. Jenkins's alleged misdeeds (Counts II, VII). *Id*. In addition, Mr. Holton asserts section 1983 claims for First Amendment retaliation against Mr. Sudzina and Ms. Sullivan in their individual capacities, as well as against the Doe Defendants predicated on their combined involvement in responding to his public records request (Counts III and V).

And lastly, by way of separate count, Mr. Holton seeks, inter alia, declaratory and injunctive relief, along with nominal, compensatory, and punitive damages against Mr. Sudzina and Ms. Jenkins in their official capacities (Count IV). *Id.* at 19–20. With respect to the former relief, Mr. Holton asks that the Court order the Defendants to preserve all relevant documents and metadata and to produce both a privilege log and a declaration from an "appropriate records custodian" identifying the "systems and locations searched," the "search terms/filters used," the "preservation steps taken," and "any locations not searched and why." *Id*. Mr. Holton further asks that the Court declare that the "administrative practices" outlined in his amended complaint concerning the scheduling of hearings and responses to public record requests violated the First Amendment. *Id.* at 20.

In his IFP Motion, Mr. Holton represents that he owns a home worth $375,000, along with two vehicles collectively valued at $23,000, but that he is unemployed and has no income. (Doc. 24 at 5). Mr. Holton also represents that his monthly expenses total approximately $2,400, and include payments to cover his housing, medical, and insurance needs, as well as to support a minor child. *Id.* at 5–7.

II.

Pursuant to 28 U.S.C. § 1915, a district court "may authorize the commencement, prosecution[,] or defense of any suit, action[,] or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor" upon a showing of indigency by affidavit. 28 U.S.C. § 1915(a)(1). A district court has "wide discretion" to grant or deny an application to proceed in forma pauperis. *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306–07 (11th Cir. 2004) (per curiam) (citation omitted). While such an application need not establish that the litigant is "absolutely destitute," it must demonstrate that the litigant, because of his poverty, is unable to pay the court fees and costs, as well as to provide the "necessities for himself and his dependents." *Id.* at 1307 (internal quotation marks and citation omitted). In assessing whether a litigant is indigent, "courts will generally look to whether [he] is employed, [his] annual salary, and any other property or assets [he] may possess." *Lesure v. Saul*, 2021 WL 2003458, at *1 (M.D. Fla. Mar. 31, 2021) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2021 WL 2003073 (M.D. Fla. May 19, 2021).

When an application to proceed in forma pauperis is filed, a district court must also review and dismiss a plaintiff's complaint sua sponte if it finds that the action "is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In evaluating a complaint under this framework, a court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Jara v. Nunez*, 878 F.3d 1268, 1271–72 (11th Cir. 2018) (citation omitted). A court, however, will not "afford [any] presumption of truth to legal conclusions and recitations of the basic elements of a cause of action." *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013) (per curiam) (citations omitted).

Finally, while a pro se pleading is to be construed liberally, a court is not to "act as de facto counsel" for an unrepresented litigant, nor is it to "rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted).

### III.

Irrespective of whether Mr. Holton may proceed in forma pauperis, his amended complaint is fatally flawed—at a minimum—because certain of the counts in that pleading are barred by the doctrine of quasi-judicial immunity and because the remaining counts fail to state a claim upon which relief may be granted. Each of these infirmities will be addressed in turn.

A.

It is well settled that state and federal judges are afforded absolute immunity for conduct performed while serving "in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (per curiam) (quoting *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam)). This is true even where the challenged behavior by a judge is erroneous, malicious, or exceeds the judge's authority. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (citation omitted).

In a similar vein, non-judicial officials are absolutely immune from suit for "duties that are integrally related to the judicial process." *Jenkins v. Clerk of Ct., U.S. Dist. Ct., S.D. Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005) (per curiam); *see also Roth v. King*, 449 F.3d 1272, 1287 (D.C. Cir. 2006) (same) (quoting *Barr v. Matteo*, 360 U.S. 564, 569 (1959)); *see also Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) ("'Judicial immunity' is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities.") (citations omitted). Whether a particular non-judicial official is accorded such quasi-judicial immunity is "determined by a functional analysis of [the official's] actions in relation to the judicial process." *Jenkins*, 150 F. App'x at 990. Under this framework, a court must look to the "nature of the responsibilities of the individual official" and ascertain whether he or she was engaging in a sufficiently judicial function. *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985).

7

Here, as noted above, Mr. Holton avers that Ms. Jenkins, along with Mr. Sudzina in his supervisory capacity over Ms. Jenkins, retaliated against him in violation of his First and Fourteenth Amendment rights by improperly managing both the court's caseload and the litigants who appeared before Judge Hill. (Doc. 22). As also discussed previously, Ms. Jenkins's—and, by extension, Mr. Sudzina's—purportedly unlawful conduct included setting hearings only with opposing counsel's consent, scheduling a proceeding without adequately conferring with Mr. Holton, and participating in discussions with opposing counsel regarding substantive issues without notifying Mr. Holton. *Id.* These activities are fairly viewed as quasi-judicial in nature and thus fall within the ambit of the doctrine of quasi-judicial immunity. *See Gaston v. Lake Cnty.*, 2023 WL 9287506, at *7 (M.D. Fla. Jan. 4, 2023) (finding that a clerk of court was absolutely immune for "decisions related to scheduling hearings and providing [c]lerk-generated forms," as these responsibilities were "directly related to the judicial process"); *Reitmire v. Fla. Atty's Gen.*, 2008 WL 341439, at *3 (M.D. Fla. Feb. 5, 2008) (deeming a clerk of court to be shielded under the doctrine of quasi-judicial immunity for alleged constitutional violations "stemming from the amount of time the judge required to rule on a matter[ ] and the court's denial of certain motions"); *see also Barnes v. City of Dothan*, 795 F. Supp. 2d 1276, 1281 (M.D. Ala. July 6, 2011) ("[D]ocket management and case scheduling are certainly normal judicial functions."); *Grant v. Countrywide Home Loans, Inc.*, 2009 WL 1437566, at *5–6 (N.D. Ga. May 20, 2009) (concluding that a "calendar clerk" was protected by quasi-judicial immunity where it was claimed he wrongfully "placed the underlying action on a

8

peremptory calendar," "tried to prevent th[e litigants] from appearing at the hearing," and "refused to give [the presiding judge] documents related to [the] suit"). Because Mr. Sudzina and Ms. Jenkins are entitled to quasi-judicial immunity for their challenged conduct described in Counts I, II, VI, and VII, those counts should be dismissed.

B.

To properly plead a claim under section 1983, a plaintiff must aver (1) the challenged "act or omission deprived [him] of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "the act or omission was done by a person acting under color of law." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996–97 (11th Cir. 1990) (internal quotation marks and citations omitted). As the first prong of this analysis makes clear, a section 1983 claim must be premised on the violation of a federal right, not a state law. *Ensley v. Soper*, 142 F.3d 1402, 1407 n.4 (11th Cir. 1998) (citation omitted).

To succeed on a section 1983 claim for First Amendment retaliation—as Mr. Holton seeks to do in this case—a plaintiff must show (1) "he engaged in protected speech," (2) "the defendant's conduct adversely affected the protected speech," and (3) "a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480–81 (11th Cir. 2016) (citation omitted). Of import, a defendant "adversely affects" protected speech only if his "alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise

9

of [his] First Amendment rights." *Bailey*, 843 F.3d at 481 (internal quotation marks and citation omitted).

Here, as referenced earlier, Mr. Holton's First Amendment retaliation claim against Mr. Sudzina, Ms. Sullivan, and the Doe Defendants is predicated on their purportedly deficient handling of his public records request. As described by Mr. Holton, the Defendants' "prepayment requirements, unlogged redactions, and 'no such records' assertions" in response to his documentary demands worked to "deter an ordinary person from continuing to petition" the government. (Doc. 22 at 15, 23).

Even assuming that Mr. Holton's averments demonstrate he was engaged in constitutionally protected speech, they do not establish that the Defendants actually retaliated against him as a result of his public records request. At most, they suggest that the Defendants' collective response to his inquiries did not comply with Florida's Public Records Act. Such a state law violation, however, does not suffice for purposes of section 1983. *See Viera v. City of Lake Worth*, 853 F. App'x 356, 360 (11th Cir. 2021) (per curiam) ("Florida's Public Records [A]ct does not provide a legal basis for the [plaintiffs' section] 1983 claim."); *Garrette v. Fed. Bureau of Investigation*, 2019 WL 2271116, at *3 (M.D. Fla. Apr. 16, 2019) ("To the extent that [the plaintiff] is alleging a violation of Florida's public records law, such an allegation does not give rise to a claim that is cognizable in federal court because it fails to implicate a federal right.") (citations omitted), *report and recommendation adopted*, 2019 WL 2269879 (M.D. Fla. May 28, 2019); *see also Merritt v. Fla. Parole Comm'n*, 2009 WL 4403323, at *5 (N.D. Fla. Dec. 1, 2009) ("To the degree [the p]laintiff alleges his claim should go forward

based on not being provided records pursuant to a state law public records request, that is a state law claim and not a federal constitutional claim.") (internal citation omitted); *Hanson v. City of Spokane*, 2019 WL 544956, at *2 (E.D. Wash. Feb. 11, 2019) (explaining that the defendants alleged violation of the plaintiff's First Amendment right to receive information by failing to adequately address his public records request was not viable under the First Amendment but could be pursued under a state public records act). As such, Counts III and V against Mr. Sudzina, Ms. Sullivan, and the Doe Defendants are subject to dismissal as well.

C.

As noted previously, Mr. Holton separately includes a count—Count IV—seeking declaratory and injunctive relief. (Doc. 22). In support of this request, Mr. Holton cites *Ex parte Young*, 209 U.S. 123 (1908), which provides that state officials may be sued in their official capacities where a plaintiff seeks prospective equitable or declaratory relief to end continuing violations of federal law. *See Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (per curiam).

This count is likewise infirm. As the Eleventh Circuit has made clear, injunctive relief is a remedy, not an independent claim for relief. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004) ("There is no such thing as a suit for a traditional injunction in the abstract."); *see also Kornegay v. Beretta USA Corp.*, 614 F. Supp. 3d 1029, 1037 (N.D. Ala. 2022) ("Declaratory judgments and injunctions are not causes of action but, rather, are remedies tied to some other cause of action.") (citation omitted). And for the reasons set forth above, Mr. Holton is not entitled to a

declaration that the Defendants violated his constitutional rights. Count IV must accordingly be dismissed too.

IV.

Notwithstanding the above shortcomings in Mr. Holton's amended complaint, I respectfully submit that the Court dismiss that pleading without prejudice and with leave to amend, so that Mr. Holton has an opportunity to correct these problems. *See Horn v. Est. of Camacho*, 817 F. App'x 872, 874 (11th Cir. 2020) (per curiam) ("Absent one of [two] exceptions[ not applicable here], a district court must advise a *pro se* plaintiff of the deficiencies in his complaint and give him an opportunity to amend.") (citing *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291–92 (11th Cir. 2018)). If Mr. Holton elects to file a revised complaint, however, I encourage him to seek legal assistance and to consult the resources available to pro se litigants in advance of doing so. Mr. Holton may obtain advice, for instance, through the "Legal Information Program," in which the Tampa Bay Chapter of the Federal Bar Association offers unrepresented parties the chance to solicit free, limited guidance from attorneys on the procedures governing federal cases.

Mr. Holton may also review the materials the Middle District of Florida makes available to pro se litigants, which includes a "Guide for Proceeding Without a Lawyer." The Court's website additionally contains helpful links to the Federal Rules of Civil Procedure, as well as to various forms for parties in federal lawsuits to use.

## V.

In light of all the above, I respectfully recommend that the Court:

1. Deny Mr. Holton's IFP Motion without prejudice (Doc. 24);

2. Dismiss Mr. Holton's amended complaint without prejudice (Doc. 22);

3. Grant Mr. Holton leave to file, within thirty (30) days of the Court's Order, a second amended complaint that sufficiently pleads one or more cognizable causes of action over which the Court has jurisdiction; and

4. Caution Mr. Holton that a failure to abide by this directive may result in the dismissal of his case without further notice.

Respectfully submitted this 16th day of December 2025.

*[Signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies to:
Honorable William F. Jung, United States District Judge
Pro se Plaintiff